UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ROBERTA KIBBEY et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | **Cause No. 1:09-cv-143-WTL-JMS** |
| ) | |
| **MARION COUNTY et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendants' Motion for Summary Judgment (Docket No. 41). This motion is fully briefed, and the Court being duly advised, now **GRANTS IN PART AND DENIES IN PART** the Defendants' motion for the reasons, and to the extent, set forth below. In addition, the Court **DENIES** the Plaintiffs' Motion to Strike (Docket No. 59). In ruling on the Defendants' motion the Court considered all of the parties' admissible evidence and arguments.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material

fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort*

*Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II. BACKGROUND

In February 2008, the Plaintiffs, Roberta and Michael Kibbey ("Roberta" and "Michael" respectively), received a tax warrant regarding a business owned by Michael. Roberta called the telephone number on the tax warrant and spoke with Deputy Michael Stevenson of the Marion County Sheriff's Department, Tax Warrant Division ("Tax Division"). The Tax Division is responsible for collecting tax liabilities. Roberta asked to speak with someone at the Tax Division in person. Deputy Stevenson told her that she could come in the following day at 1:00 p.m.

The next day, Roberta and her daughter, Tricia, drove to the Marion County City-County Building ("City-County Building") for their meeting at the Tax Division. While Roberta and Tricia were at the City-County Building, Michael went to the Department of Revenue, at the Indiana Government Center, to attempt to pay any outstanding taxes. When Roberta arrived at the Tax Division, she was informed that the meeting would be conducted by Defendant Deputy Brigid Ford. Deputy Stevenson sat in on the meeting, which occurred in Deputy Ford's office. Deputy Ford refused to let Tricia sit in on the meeting because she was not the registered owner of the business and did not have power of attorney. Accordingly, Tricia sat at a table outside of Deputy Ford's office.

During the meeting, both officers were in full uniform and were wearing firearms. Neither officer touched, handcuffed, or physically restrained Roberta. However, Deputy Ford told Roberta that she was "going to jail." Docket No. 46, Ex. 2 at 98. In addition, Deputy

Stevenson sat so that one or both of his legs blocked the open doorway.  When Roberta asked to leave, Deputy Ford said no.  When Roberta asked to go to the bathroom, Deputy Ford said no.  When Roberta asked to use the phone to call Michael, Deputy Ford said no.  When Roberta asked to use the phone to call her attorney, Deputy Ford said no.

Throughout the meeting Deputy Ford leaned forward towards Roberta and spoke in a loud or aggressive voice.  Finally, after several hours, Roberta stood up and left Deputy Ford's office.

Roberta and Michael ultimately filed this suit, naming Deputy Ford and Marion County as Defendants.  In the Complaint, Roberta alleges violations of her Fourth and Fourteenth Amendment rights, as well as state law causes of action for false imprisonment, assault, intentional infliction of emotional distress ("IIED"), and impairment of earning capacity.  Michael filed a single state law claim for loss of consortium.

### III.  DISCUSSION

As an initial matter, the Court notes that the Plaintiffs have not put forth any facts indicating that Michael suffered any deprivation of his civil rights.  Nor have they provided any facts to show that they are bringing suit on behalf of a limited liability company ("LLC").  Accordingly, summary judgment is appropriately granted to the Defendants on Michael's federal claims and on any claims purportedly brought on behalf of an LLC.

**A.     Roberta's Fourth Amendment claim against Deputy Ford.**

Defendant Ford claims that she is entitled to qualified immunity with respect to Roberta's Fourth Amendment claim.  Qualified immunity involves a two-part inquiry.  The Court must determine whether the facts that the plaintiff has alleged make out a constitutional violation.  If

there was a constitutional violation, then the Court queries whether the right violated by the defendant was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 129 S.Ct 808, 815-16 (2009). In short, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 129 S.Ct at 816. In *Pearson*, the Supreme Court held that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. In the instant case, the Court believes that it is most appropriate to begin with the first inquiry – did Defendant Ford violate Roberta's Fourth Amendment right to be free from unlawful seizure?

Ford vigorously argues that she never seized Roberta, and thus, she did not violate Roberta's Fourth Amendment rights. It is clear that not every interaction between citizens and the police constitutes a seizure. "So long as a reasonable person would feel free 'to disregard the police and go about his business' the encounter is consensual" and no seizure has occurred. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Only when "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business,'" is the individual seized for Fourth Amendment purposes. *Id.* at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)). "Factors relevant to this determination include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994) (quoting

*United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980)).  Courts have also considered "whether the encounter occurred in a public or private place; whether the suspect consented to talk with the law enforcement agents; whether the agents informed the suspect that he was not under arrest and was free to leave; [and] whether the agents removed the suspect to another area."  *United States v. Adebayo*, 985 F.2d 1333, 1338 (7th Cir. 1993).

      Here, viewing the evidence in the light most favorable to Roberta, a seizure did occur.  Roberta was placed in a small room with two uniformed, armed deputies.  She was separated from her daughter, and was not permitted to call her husband or her attorney.  Roberta was told that she was "going to jail."  She was spoken to in an aggressive tone.  When Roberta asked to leave, Deputy Ford said no.  When she asked to use the bathroom, Deputy Ford said no.  Thus, despite the fact that Deputy Ford never touched, handcuffed, nor physically restrained Roberta, given all of the surrounding circumstances, a reasonable person in Roberta's situation would not have believed that she was free to leave.

      However, merely being seized is not enough – Roberta must show that she was unlawfully seized in violation of the Fourth Amendment.  Although Deputy Ford vigorously denies seizing Roberta, she claims that if Roberta was seized it was lawful because Ford had "reasonable suspicion to investigate criminal activity."[1]  Docket No. 48 at 13.  In order to conduct an "investigative detention" or *Terry* stop, an officer must "be able to point to specific

---

[1] Roberta moved to strike this portion of the Defendants' brief.  She claims that this argument was waived because it was raised for the first time in the reply brief.  The Court disagrees.  Deputy Ford's contention has always been that her conduct did not violate the Fourth Amendment.  The reasonable suspicion argument is merely a variation on this theme.  In addition, because the Court has reviewed and considered the Plaintiffs' surreply, which addresses the merits of Deputy Ford's "new" argument, there is no prejudice to the Plaintiffs.  Accordingly, the Motion to Strike (Docket No. 59) is **DENIED**.

and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also United States v. Adamson*, 441 F.3d 513, 520 (7th Cir. 2006) (stating that an investigative detention "is permitted when the police have reasonable suspicion, supported by articulable facts, that criminal activity is afoot").

In the instant case, although the Defendants claim that Deputy Ford had reasonable suspicion to detain Roberta to determine if she committed knowing failure to remit sales taxes, none of the admissible evidence presented by the parties supports this assertion. Deputy Ford simply has not shown that she had reasonable suspicion to seize Roberta to determine whether a crime had been committed. Lacking a reasonable suspicion, as well as probable cause, Deputy Ford's actions were unlawful. Therefore, she is not entitled to qualified immunity. Accordingly, the Defendants' Motion for Summary Judgment is **DENIED** as to Roberta's Fourth Amendment claim.

### B. Roberta's Fourteenth Amendment claim against Deputy Ford.

Roberta also brings a Fourteenth Amendment claim against Deputy Ford. The Complaint is not clear under which theory Roberta proceeds. Thus, the Court analyzed Roberta's claim under an equal protection framework, a procedural due process framework, and a substantive due process framework.

If Roberta is bringing suit under the equal protection clause of the Fourteenth Amendment, she is alleging that she is a "class of one." The Seventh Circuit "has recognized equal protection claims brought by a 'class of one,'" but has "acknowledged that it is difficult to succeed with such a claim." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "A class of one equal protection claim may be brought where (1) the plaintiff alleges that he has

been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *Id.* Thus, it is crucial that the plaintiff identify a similarly situated individual who is similarly situated but is intentionally treated differently than he. *See id.* at 1002. Like the plaintiff in *McDonald*, Roberta has failed to identify any such individual. Thus, she has failed to make out an equal protection claim. To the extent that the Complaint sought to bring suit under the equal protection clause, Defendant Ford's motion for summary judgment is **GRANTED**.

Roberta's Fourteenth Amendment claim can also be viewed as a substantive due process argument. However, as the Seventh Circuit explained in *Jewett v. Anders* 521 F.3d 818, 827 n.9 (7th Cir. 2008), "a substantive due process claim may not be maintained where a specific constitutional provision protects the right allegedly violated." The *Jewett* court relied on two Supreme Court cases – *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997), and *Graham v. Connor*, 490 U.S. 386, 394 (1989) – which both state, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Lanier*, 520 U.S. at 272 n.7. In the instant case, all of the evidence indicates that Roberta suffered a Fourth Amendment injury. In the absence of any admissible evidence indicating that she suffered another injury, her claim is properly analyzed under the Fourth Amendment. Thus, Defendant Ford's motion for summary judgment is also **GRANTED** as to any claims purportedly brought under the substantive due process clause.

In order to maintain a procedural due process claim, Roberta must show that "a state

actor has deprived [her] of a constitutionally protected liberty or property interest without due process of law." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002). Previous panels of the Seventh Circuit have addressed dual Fourth and Fourteenth Amendment claims. These panels have often disposed of both claims by finding that there was no Fourth Amendment violation. For example, in *Jewett*, the Seventh Circuit determined that because the plaintiff's detention "was within the constitutional bounds set forth by *Terry*, his procedural due process claim cannot succeed." *Jewett*, 521 F.3d at 827 n.9. However, in the instant case, the Court determined that Deputy Ford's seizure did not comport with *Terry*. Accordingly, Defendant Ford's motion for summary judgment is **DENIED** as to Roberta's procedural due process claim.

        **C.**        **Roberta's federal claims against Marion County.**

As to Defendant Marion County, summary judgment is appropriate in the County's favor on both of Roberta's federal claims. In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-91 (1978), the Supreme Court held:

> Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.

The Court continued, however, and emphasized that "Congress did *not* intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort . . . . [A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a

*respondeat superior* theory." *Id.* at 691 (first emphasis added).

In order to survive summary judgment, Roberta must "present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations and internal quotation marks omitted). In addition, she must show that the official policy or custom was the cause of the alleged constitutional violation – the "moving force" behind it. *Id.*

Roberta has neither alleged nor shown that Marion County maintains a policy that, when applied in this case, explicitly violated her constitutional rights. Accordingly, to the extent that she proceeds under the express policy theory, *see Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005), her argument fails. Roberta has also failed to provide any evidence to indicate that an unconstitutional unofficial policy or custom caused her injury. In order to show that an unconstitutional unofficial policy is at work Roberta would need "evidence that there is a true municipal policy at issue, not a random event." *Id*. at 380. Roberta has failed to make this showing. Instead, the facts that she has introduced indicate that this was an "isolated incident that . . . cannot support municipal liability." *Id*. Because Roberta has not showed that any other individual endured the same type of mistreatment that she did, her unofficial policy argument also fails. Finally, Roberta has not provided any evidence or authority to indicate that Deputy Ford was a "final policymaker" or "decision maker" such that her conduct would impose liability on Marion County. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). The Court's review of the parties' evidence and arguments indicates instead that Ford was not a decision maker. Accordingly, her misconduct cannot impose municipal liability on Marion County.

Having scoured the parties' pleadings and briefs, the Court has been unable to find a single fact supporting municipal liability in this case. Absent any evidence whatsoever, the statement that "[a]t all times relevant to this action, [Defendant Ford] was acting as the agent, servant, and employee of defendant, County of Marion," Compl. ¶ 9a, is insufficient to support a *Monell* claim against Marion County. Accordingly, summary judgment is **GRANTED** in favor of Marion County on Roberta's federal claims.

### D. State law claims.

The Court now turns to the Plaintiffs' state law claims. As an initial matter, the Court notes that Roberta plead a claim for impairment of earning capacity against both Defendants. "'Indiana recognizes that a proper element of damage is the impairment of earning capacity which means the impairment of ability to engage in one's vocation as distinguished from loss of earnings.'" *Berman v. Cannon*, 878 N.E.2d 836, 842 (Ind. Ct. App. 2007) (quoting *Scott v. Nabours*, 296 N.E.2d 438, 441 (Ind. Ct. App. 1973)). Nothing in the cases cited by the parties, and nothing revealed by the Court's own research, indicates that Indiana recognizes impairment of earning capacity as a stand alone tort. Because Indiana courts do not recognize this cause of action, the Defendants' Motion for Summary Judgment is **GRANTED** as to Roberta's claim for impairment of earning capacity.

What remains are Roberta's claims for false imprisonment, assault, and IIED, as well as Michael's loss of consortium claim. Michael's loss of consortium claim against the Defendants is barred by the Indiana Tort Claims Act ("ITCA"). The ITCA requires that a claimant provide notice of the claim. If notice is not provided within the statutory time period, then the claim is barred. *See* Ind. Code 34-13-3-8. These notice provisions apply equally to governmental

entities and governmental employees.  *Poole v. Clase*, 476 N.E.2d 828, 831-32 (Ind. 1985).

In *Putnam County v. Caldwell*, 505 N.E.2d 85, 87 (Ind. Ct. App. 1987), the court of appeals held that loss of consortium is an independent cause of action, and therefore, a plaintiff must file his or her own tort claims notice within the allotted time period.  Because the plaintiff in *Caldwell* failed to do so, summary judgment was appropriate on her loss of consortium claim.  So too in this case.  Because Michael failed to file a tort claims notice as required by the ITCA, summary judgment is **GRANTED** in favor of the Defendants on his claim for loss of consortium.

With respect to Roberta's false imprisonment, assault, and IIED claims, Defendant Ford is immune under the ITCA.  The ITCA "governs lawsuits against political subdivisions and their employees.  Among other thing the statute provides substantial immunity for conduct within the scope of the employee's employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003); *see also* IND. CODE 34-13-3-3.  The purpose of the ITCA is to allow "government employees acting in the scope of their employment the freedom to carry out their duties without the fear of litigation." *Id*.  Thus, when a government employee is sued for actions taken within the scope of her employment, the "government employee defendant has a complete defense: the action occurred within the scope of employment." *Bushong*, 790 N.E.2d at 472.  In the instant case, Roberta has sued Deputy Ford for actions taken within the scope of her employment.  She claims that "[a]t all times relevant to this action, [Deputy Ford] was acting as the agent, servant, and employee of defendant, County of Marion."  Compl. ¶ 9a.  Having scoured the parties' briefs and evidentiary submissions, the Court has found nothing to contravene this conclusion.  Because Deputy Ford was acting in the scope of her employment when the assault, false

imprisonment, and IIED allegedly occurred, Roberta's claims against Deputy Ford are barred by the ITCA. Accordingly, Deputy Ford's motion for summary judgment is **GRANTED** as to Roberta's claims for assault, false imprisonment, and IIED.

As to Marion County, Roberta's claims for assault and IIED are barred by the law enforcement immunity provision of the ITCA. *See* IND. CODE 34-13-3-3(8). Indiana Code 34-13-3-3(8) states:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

When determining whether a governmental entity is entitled to immunity under Ind. Code 34-13-3-3(8), the Court asks whether the employee was acting within the scope of his employment when the activity occurred. *See Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000). An employee's conduct is within the scope of employment when it is "'of the same general nature as that authorized, or incidental to the conduct authorized.'" *Id.* (quoting RESTATEMENT (SECOND) OF AGENCY § 229 (1958)). In the instant case the Plaintiffs have not identified any evidence, nor has the own Court's review of the record revealed anything to indicate that Deputy Ford ever acted outside the scope of her employment. Because Deputy Ford acted within the scope of her employment at all relevant times, Marion County's motion for summary judgment is **GRANTED** as to Roberta's assault and IIED claims.

The tort of false imprisonment is expressly excepted from the immunity provision. Therefore, Marion County cannot invoke law enforcement immunity with respect to this claim. "Under Indiana law, false imprisonment is defined as the unlawful restraint upon one's freedom

13

of movement or the deprivation of one's liberty without consent." *Earles v. Perksin*, 788 N.E.2d 1260 (Ind. Ct. App. 2003). Based on the facts presently before the Court, a reasonable juror could find that Roberta was falsely imprisoned. Accordingly, summary judgment is inappropriate on Roberta's false imprisonment claim against Marion County. Thus, the Defendants' motion is **DENIED** as to this claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Docket No. 41) is **GRANTED IN PART AND DENIED IN PART**. The Plaintiffs' Motion to Strike (Docket No. 59) is also **DENIED**.

SO ORDERED:   05/10/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Rochelle Elaine Borinstein
Attorney at Law
rborinstein@stanleykahn.com

Stacy Walton Long
Krieg Devault LLP
slong@kdlegal.com

Jonathan Lamont Mayes
City of Indianapolis, Corporation Counsel
jmayes@indygov.org

Alexander Phillip Will
Office of Corporation Counsel, City of
Indianapolis
awill@indygov.org

14